## IN THE U.S. DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

AIG EUROPE LIMITED, INDIVIDUALLY, )
AND AS LEAD UNDERWRITER ON )
BEHALF OF CERTAIN INTERESTED )
UNDERWRITERS Subscribing to )
Policy 05210A13AD, )
 )
    Plaintiffs, )
 )
vs. )   Case No. _____
 )
LANDING GEAR TECHNOLOGIES, )
LLC, RAUL CRUZ ALVAREZ, and )
STREAMLINE AVIATION, INC. )
 )
    Defendants. )
_____)

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, AIG EUROPE LIMITED, INDIVIDUALLY, AND AS LEAD UNDERWRITER ON BEHALF OF CERTAIN INTERESTED UNDERWRITERS Subscribing to Policy 05210A13AD (collectively hereinafter, "UNDERWRITERS"), sue LANDING GEAR TECHNOLOGIES, LLC, RAUL CRUZ ALVAREZ, and STREAMLINE AVIATION, INC. and allege as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the Plaintiffs and all Defendants and because the amount in controversy exceeds $75,000.00.

2. At all times material hereto, Plaintiff, AIG EUROPE LIMITED, was a United Kingdom corporation with its principal place of business located in the United Kingdom.

3. At all times material hereto, all following underwriters subscribing to Policy 05210A13AD were incorporated outside the State of Florida and maintained their principle place of business outside the State of Florida. No following underwriters are incorporated in the State of Florida and none maintain their principle place of business in the State of Florida.

4. At all times material hereto, Defendant, LANDING GEAR TECHNOLOGIES, LLC (hereinafter, "LGT"), was a Florida corporation with its principal place of business located in Hialeah, Dade County, Florida.

5. At all times material hereto, Defendant, RAUL CRUZ ALVAREZ (hereinafter, "ALVAREZ") was a person *sui juris* and a citizen and resident of Dade County, Florida.

6. At all times material hereto, Defendant, STREAMLINE AVIATION, INC. (hereinafter, "STREAMLINE"), was a Florida corporation with its principal place of business located in Miami, Dade County, Florida.

7. This Court has personal jurisdiction over the Defendants because the Defendants' residence and/or principle place of business is located in the State of Florida, the Defendants regularly conduct(ed) business within the State of Florida, and the Defendants have properly availed themselves of the benefits of doing business within the State of Florida. Further, Defendants' negligence occurred within the State of Florida and all acts giving rise to these causes of action occurred within the State of Florida.

8. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b). The Defendants reside within this District and a substantial part of the events giving rise to this claim occurred within this District.

## GENERAL ALLEGATIONS

9. At all times material hereto, UNDERWRITERS issued a policy of insurance to ASL AVIATION GROUP LIMITED, ACL TRADING LTD, AIR CONTRACTORS ENGINEERING LTD, BAC GROUP LTD, and AIR CONTRACTORS LTD (collectively hereinafter, "ASL") which covered ASL and its Boeing 737-476 aircraft, Irish Registration Number EI-STD (hereinafter, "EI-STD") for the damages ASL suffered as a result of the underlying incident involving EI-STD.

10. At all times material hereto, AIG EUROPE LIMITED INDIVIDUALLY also issued a separate policy of insurance to ASL, policy number 14661A13AC, which insured ASL for the deductible on the aforementioned insurance policy, policy number 05210A13AD.

11. Pursuant to the foregoing policies of insurance UNDERWRITERS made payment to ASL for damages caused as a result of the underlying crash. *See*, Exhibits "A," "B," and "C." Consequently, UNDERWRITERS are subrogated to, and stand in the shoes of, ASL.

12. At all times material hereto, LGT was in the business of overhauling, repairing, assembling, modifying, servicing, maintaining, inspecting, packaging, and selling various aircraft components.

13. At all times material hereto, STREAMLINE was in the business of overhauling, repairing, assembling, modifying, servicing, maintaining, inspecting, packaging, and selling various aircraft components.

14. At all times material hereto, ALVAREZ was an employee or agent of LGT.

15. In 2012 and 2013, LGT overhauled an inner cylinder assembly for an aircraft landing gear (part number 65-46116-55, serial number SS4027), including various machining, grinding, chrome plating, honing, polishing, inspecting, testing, and other activities conducted on

the inner cylinder assembly as more fully set forth in LGT's work order number 100453 attached hereto as Exhibit "D."

16. STREAMLINE participated in performing portions of the overhaul, including various machining, grinding, honing, polishing, inspecting, testing, and other activities conducted on the inner cylinder assembly as more fully set forth in STREAMLINE's work order number 200699 attached hereto as Exhibit "E."

17. On or about January 25, 2013, LGT/ALVAREZ completed the overhaul of the inner cylinder assembly and issued an FAA Form 8130-3, Airworthiness Approval Tag (work order number 100453), for the inner cylinder assembly, signed by ALVAREZ on behalf of the LGT repair station, certifying that the inner cylinder assembly was overhauled in accordance with Boeing CMM 32-11-11 Rev. 109 dated: November 1, 2012 and FAA airworthiness regulations, and certifying that the inner cylinder assembly was airworthy and approved for return to service. A true and accurate copy of the Airworthiness Approval Tag is attached hereto and incorporated herein as Exhibit "F".

18. After the inner cylinder assembly was overhauled, Defendants placed the inner cylinder assembly into the stream of commerce where it was ultimately obtained by ASL and installed on EI-STD in reliance upon the Airworthiness Approval Tag issued by LGT/ALVAREZ. See, Exhibit "D."

19. On April 29, 2014, EI-STD was damaged beyond repair during landing at East Midlands Airport in in Leicestershire, England, when the inner cylinder assembly failed and the left main landing gear detached, causing EI-STD to roll left and crash on the runway.

20. The crash and resulting aircraft damage were caused by Defendants' improper overhaul of the inner cylinder assembly.

21. The accident was investigated by the Air Accidents Investigation Branch of the United Kingdom (hereinafter, the "AAIB"). The AAIB concluded that the main landing gear "failure was as a result of stress corrosion cracking and fatigue weakening the high strength steel substrate at a point approximately 75 mm above the axle," and that "it is likely that some degree of heat damage was sustained by the inner cylinder during the overhaul process as indicated by the presence of chicken wire cracking within the chrome plating over the majority of its surface." The Defendants caused that heat damage.

22. As a direct and proximate result of the defective and improperly overhauled inner cylinder assembly which resulted in the foregoing incident, Plaintiffs suffered damages, including without limitation: $7 million for the total loss of EI-STD (inclusive of deductible paid by ASL), and $220,618 for costs related to wreckage removal, aircraft storage and other associated costs.

## COUNT I
## STRICT LIABILITY AGAINST LGT

23. Plaintiffs adopt and re-allege paragraphs 1-22 as if set forth fully herein.

24. LGT was in the business of manufacturing, overhauling, repairing, assembling, modifying, servicing, maintaining, inspecting, packaging, and selling inner cylinder assemblies and other aircraft parts.

25. LGT manufactured, overhauled, repaired, assembled, modified, serviced, maintained, inspected, packaged, and/or sold the subject inner cylinder assembly. After doing so, LGT placed the subject inner cylinder assembly into the stream of commerce for use by an ultimate consumer.

26. At the time the subject inner cylinder assembly left LGT'S control, it was defective, unreasonably dangerous, unfit for its intended use, and incompatible with the reasonable expectations for the performance of said product.

27. ASL received the subject inner cylinder assembly without substantial change in the condition in which it is sold.

28. At the time of the incident described above, the subject inner cylinder assembly was being utilized in substantially the same condition as it existed when it was sold by LGT.

29. At the time of the incident described above, ASL was utilizing the subject inner cylinder assembly for the ordinary purpose for which it was intended.

30. Because the subject inner cylinder assembly was defective, unreasonably dangerous, unfit for its intended use, and incompatible with the reasonable expectations for the performance of said product, it failed and caused EI-STD to crash.

31. As a direct and proximate result of the defective design, manufacture, overhaul, repair, assembly, modification, and/or inspection of the inner cylinder assembly, the Plaintiffs suffered damages.

WHEREFORE, Plaintiffs demand a trial by jury pursuant to Rule 38(b) Fed.R.Civ.P., and judgment for compensatory damages against Defendant LANDING GEAR TECHNOLOGIES, including all costs incurred in the prosecution of this action, prejudgment interest, post judgment interest, and such further and additional relief available by law.

## COUNT II
## STRICT LIABILITY AGAINST STREAMLINE

32. Plaintiffs adopt and re-allege paragraphs 1-22 as if set forth fully herein.

33. STREAMLINE was in the business of manufacturing, overhauling, repairing, assembling, modifying, servicing, maintaining, inspecting, packaging, and selling inner cylinder assemblies and other aircraft parts.

34. STREAMLINE manufactured, overhauled, repaired, assembled, modified, serviced, maintained, inspected, packaged, and/or sold the subject inner cylinder assembly. After doing so, STREAMLINE placed the subject inner cylinder assembly into the stream of commerce for use by an ultimate consumer.

35. At the time the subject inner cylinder assembly left STREAMLINE'S control, it was defective, unreasonably dangerous, unfit for its intended use, and incompatible with the reasonable expectations for the performance of said product.

36. ASL received the subject inner cylinder assembly without substantial change in the condition in which it is sold.

37. At the time of the incident described above, the subject inner cylinder assembly was being utilized in substantially the same condition as it existed when it was sold by STREAMLINE.

38. At the time of the incident described above, ASL was utilizing the subject inner cylinder assembly for the ordinary purpose for which it was intended.

39. Because the subject inner cylinder assembly was defective, unreasonably dangerous, unfit for its intended use, and incompatible with the reasonable expectations for the performance of said product, it failed and caused EI-STD to crash.

40. As a direct and proximate result of the defective design, manufacture, overhaul, repair, assembly, modification, and/or inspection of the inner cylinder assembly, the Plaintiffs suffered damages.

WHEREFORE, Plaintiffs demand a trial by jury pursuant to Rule 38(b) Fed.R.Civ.P., and judgment for compensatory damages against Defendant STREAMLINE AVIATION, INC., including all costs incurred in the prosecution of this action, prejudgment interest, post judgment interest, and such further and additional relief available by law.

## COUNT III
## NEGLIGENCE AGAINST LGT

41. Plaintiffs adopt and re-allege paragraphs 1-22 as if set forth fully herein.

42. LGT owed the Plaintiffs and their insureds a duty to use reasonable care in overhauling, repairing, and assembling the subject inner cylinder assembly.

43. LGT breached its duty of reasonable care by:

   a. Failing to overhaul, repair, and assemble the subject inner cylinder assembly with appropriate parts;

   b. Failing to overhaul, repair, and assemble the subject inner cylinder assembly to the appropriate specifications;

   c. Failing to overhaul, repair, and assemble the subject inner cylinder assembly in compliance with the appropriate overhaul manual;

   d. Failing to ensure that the subject inner cylinder assembly was airworthy;

   e. Failing to properly train employees to ensure the proper overhauling, repairing, and assembly of the subject inner cylinder assembly; and

   f. Otherwise failing to use reasonable care in the overhauling, repairing, and assembling the subject inner cylinder assembly.

44. As a result of LGT'S actions and/or omissions, LGT overhauled and sold the inner cylinder assembly in a defective condition.

45. ASL received the subject inner cylinder assembly without substantial change in the condition in which it is sold and while ASL was utilizing the inner cylinder assembly for the ordinary purpose for which it was intended, the inner cylinder assembly failed causing the left main landing gear to detach from EI-STD.

46. As a direct and proximate result of the defective and improperly overhauled inner cylinder assembly which resulted in this accident, the Plaintiffs suffered damages. Such damages include, but are not limited to: property damages, wreckage removal, aircraft storage, and associated costs, loss of use of the aircraft, loss of profits, and other expenses incurred due to the loss of use of the aircraft.

WHEREFORE, Plaintiffs demand a trial by jury pursuant to Rule 38(b) Fed.R.Civ.P., and judgment for compensatory damages against Defendant LANDING GEAR TECHNOLOGIES, including all costs incurred in the prosecution of this action, prejudgment interest, post judgment interest, and such further and additional relief available by law.

## COUNT IV
## NEGLIGENCE AGAINST STREAMLINE

47. Plaintiffs adopt and re-allege paragraphs 1-22 as if set forth fully herein.

48. STREAMLINE owed the Plaintiffs and their insureds a duty to use reasonable care in overhauling, repairing, and assembling the subject inner cylinder assembly.

49. STREAMLINE breached its duty of reasonable care by:

   a. Failing to overhaul, repair, and assemble the subject inner cylinder assembly with appropriate parts;

   b. Failing to overhaul, repair, and assemble the subject inner cylinder assembly to the appropriate specifications;

    c. Failing to overhaul, repair, and assemble the subject inner cylinder assembly in compliance with the appropriate overhaul manual;

    d. Failing to ensure that the subject inner cylinder assembly was airworthy;

    e. Failing to properly train employees to ensure the proper overhauling, repairing, and assembly of the subject inner cylinder assembly; and

    f. Otherwise failing to use reasonable care in the overhauling, repairing, and assembling the subject inner cylinder assembly.

50. As a result of STREAMLINE'S actions and/or omissions, STREAMLINE overhauled and sold the inner cylinder assembly in a defective condition.

51. ASL received the subject inner cylinder assembly without substantial change in the condition in which it is sold and while ASL was utilizing the inner cylinder assembly for the ordinary purpose for which it was intended, the inner cylinder assembly failed causing the left main landing gear to detach from EI-STD.

52. As a direct and proximate result of the defective and improperly overhauled inner cylinder assembly which resulted in this accident, the Plaintiffs suffered damages. Such damages include, but are not limited to: property damages, wreckage removal, aircraft storage, and associated costs, loss of use of the aircraft, loss of profits, and other expenses incurred due to the loss of use of the aircraft.

WHEREFORE, Plaintiffs demand a trial by jury pursuant to Rule 38(b) Fed.R.Civ.P., and judgment for compensatory damages against Defendant STREAMLINE AVIATION, INC., including all costs incurred in the prosecution of this action, prejudgment interest, post judgment interest, and such further and additional relief available by law.

## COUNT V
## NEGLIGENT MISREPRESENTATION AGAINST RAUL CRUZ ALVAREZ

53. Plaintiffs adopt and re-allege paragraphs 1-22 as if set forth fully herein.

54. ALVAREZ owed LGT's customers and their downstream customers, specifically including the Plaintiffs and their insureds, a duty to use reasonable care and competence in obtaining and communicating information regarding overhaul of the subject inner cylinder assembly.

55. ALVAREZ personally executed the FAA 8130-3, Airworthiness Approval Tag. See, Exhibit "F".

56. The Airworthiness Approval Tag attached as Exhibit "F" is a statement certifying that ALVAREZ/LGT overhauled the subject inner cylinder assembly in accordance with Boeing CMM 32-11-11 Rev. 109 dated: November 1, 2012 and the FAA airworthiness regulations, and certifying that the inner cylinder assembly was airworthy and approved for return to service.

57. The statements contained within the Airworthiness Approval Tag attached as Exhibit "F" are false. The inner cylinder assembly was not overhauled in compliance with the overhaul manual and the inner cylinder assembly was not airworthy.

58. These false statements pertained to material facts as they relate to the inner cylinder assembly's airworthiness, value, and reliability.

59. ALVAREZ was negligent in making these statements because he made the statements without knowledge of their veracity. Further, under the circumstances, through the exercise of reasonable care, ALVAREZ should have known, and could have discovered, that the statements were false.

60. ALVAREZ made these false statements intending to induce the inner cylinder assembly's purchaser and ultimate consumer to rely thereon.

61. ASL and its agents reasonably relied upon ALVAREZ'S statements contained within Exhibit "F," and as part of that reliance ASL purchased the inner cylinder assembly, and had it installed on its aircraft where it failed and caused the Plaintiffs to suffer damages.

62. But for ALVAREZ'S false statements contained within the Airworthiness Approval Tag attached as Exhibit "F," ASL would not have purchased the inner cylinder assembly nor installed it for use on its aircraft.

63. As a direct and proximate result of the defective and improperly overhauled inner cylinder assembly which resulted in this accident, the Plaintiffs suffered damages. Such damages include, but are not limited to: property damages, wreckage removal, aircraft storage, and associated costs, loss of use of the aircraft, loss of profits, and other expenses incurred due to the loss of use of the aircraft.

WHEREFORE, Plaintiffs demand a trial by jury pursuant to Rule 38(b) Fed.R.Civ.P., and judgment for compensatory damages against Defendant RAUL CRUZ ALVAREZ, including all costs incurred in the prosecution of this action, prejudgment interest, post judgment interest, and such further and additional relief available by law.

## COUNT VI
## VICARIOUS LIABILITY AGAINST LGT
## FOR THE NEGLIGENT MISREPRESENTATIONS OF ALVAREZ

64. Plaintiffs adopt and re-allege paragraphs 1-22 and 53-63 as if set forth fully herein.

65. At all times material, including when ALVAREZ executed the Airworthiness Approval Tag attached as Exhibit "F," ALVAREZ was an authorized employee and agent of LGT and was acting within the course and scope of his duties with LGT. Therefore, LGT is

vicariously liable for ALVAREZ'S actions and/or omissions in negligently misrepresenting that the subject inner cylinder assembly was properly overhauled and airworthy.

66. As a direct and proximate result of the defective and improperly overhauled inner cylinder assembly which resulted in this accident, the Plaintiffs suffered damages. Such damages include, but are not limited to: property damages, wreckage removal, aircraft storage, and associated costs, loss of use of the aircraft, loss of profits, and other expenses incurred due to the loss of use of the aircraft.

WHEREFORE, Plaintiffs demand a trial by jury pursuant to Rule 38(b) Fed.R.Civ.P., and judgment for compensatory damages against Defendant LANDING GEAR TECHNOLOGIES, LLC, including all costs incurred in the prosecution of this action, prejudgment interest, post judgment interest, and such further and additional relief available by law.

## COUNT VII
## BREACH OF EXPRESS WARRANTY AGAINST LGT

67. Plaintiffs adopt and re-allege paragraphs 1-22 as if set forth fully herein.

68. LGT overhauled, repaired, assembled, modified, inspected, packaged, and/or sold the subject inner cylinder assembly.

69. LGT issued work orders and a FAA 8130-3, Airworthiness Approval Tag, for the subject inner cylinder assembly. See, Exhibits "D" and "F."

70. The work orders and Airworthiness Approval Tag attached as Exhibits "D" and "F" contain express statements warranting that LGT properly overhauled the subject inner cylinder assembly and that the inner cylinder assembly was airworthy.

71. ASL was a foreseeable purchaser and user of the subject inner cylinder assembly.

13

72. ASL relied upon warranties expressed in Exhibits "D" and "F" by LGT and as part of that reliance ASL purchased the inner cylinder assembly and had the inner cylinder assembly installed on its aircraft where it failed and caused the Plaintiffs to suffer damages.

73. But for the warranties expressly stated by LGT in Exhibits "D" and "F," ASL would not have purchased the subject inner cylinder assembly, and would not have installed the inner cylinder assembly on its aircraft.

74. As a direct and proximate result of LGT'S breach of the warranties expressly stated in Exhibits "D" and "F," the Plaintiffs suffered damages, including but not limited to: property damages, wreckage removal, aircraft storage, and associated costs, loss of use of the aircraft, loss of profits, and other expenses incurred due to the loss of use of the aircraft.

75. Plaintiffs, through their agents, have notified LGT on numerous occasions that the subject inner cylinder assembly was improperly overhauled, was not airworthy, and failed causing the Plaintiffs to suffer damages. Despite demand to do so, LGT has failed to make payment to remedy the damages caused by the inner cylinder assembly it sold in contravention of its warranties.

WHEREFORE, Plaintiffs demand a trial by jury pursuant to Rule 38(b) Fed.R.Civ.P., and judgment for compensatory damages against Defendant LANDING GEAR TECHNOLOGIES, LLC, including all costs incurred in the prosecution of this action, prejudgment interest, post judgment interest, and such further and additional relief available by law.

## COUNT VIII
## BREACH OF EXPRESS WARRANTY AGAINST STREAMLINE

76. Plaintiffs adopt and re-allege paragraphs 1-22 as if set forth fully herein.

77. STREAMLINE overhauled, repaired, assembled, modified, inspected, packaged, and/or sold the subject inner cylinder assembly.

14

78. STREAMLINE issued various work orders and related documents (hereinafter, "work orders"), for the subject inner cylinder assembly. See, Exhibit "E".

79. The work orders attached as Exhibit "E" contain express statements that STREAMLINE properly overhauled the subject inner cylinder assembly in accordance with the applicable "SOPM," which is an acronym for standard operating procedures manuals.

80. ASL was a foreseeable purchaser and user of the subject inner cylinder assembly.

81. ASL relied upon warranties expressed in inner cylinder assembly's work orders attached as Exhibit "E," and as part of that reliance ASL purchased the inner cylinder assembly and had the inner cylinder assembly installed on its aircraft where it failed and caused the Plaintiffs to suffer damages.

82. But for the warranties expressly stated in STREAMLINE'S work orders attached as Exhibit "E," ASL would not have purchased the subject inner cylinder assembly, and would not have installed the inner cylinder assembly on its aircraft.

83. As a direct and proximate result of STREAMLINE'S breach of the warranties expressly stated in the work orders attached as Exhibit "E," the Plaintiffs suffered damages, including but not limited to: property damages, wreckage removal, aircraft storage, and associated costs, loss of use of the aircraft, loss of profits, and other expenses incurred due to the loss of use of the aircraft.

84. Plaintiffs, through their agents, notified STREAMLINE on numerous occasions that the subject inner cylinder assembly was improperly overhauled, was not airworthy, and failed causing the Plaintiffs to suffer damages. Despite demand to do so, STREAMLINE has failed to make payment to remedy the damages caused by the inner cylinder assembly it sold in contravention of its warranties.

WHEREFORE, Plaintiffs demand a trial by jury pursuant to Rule 38(b) Fed.R.Civ.P., and judgment for compensatory damages against Defendant STREAMLINE AVIATION, INC., including all costs incurred in the prosecution of this action, prejudgment interest, post judgment interest, and such further and additional relief available by law.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues so triable as a matter of right.

/s/ John M. Murray
**TRIAL COUNSEL FOR ASL**
**JOHN M. MURRAY**
Fla. Bar No. 157325
jmurray@mmhlaw.com
**CHRISTOPHER D. CLOUD**
Fla. Bar No. 0027610
ccloud@mmhlaw.com
**MURRAY, MORIN & HERMAN, P.A.**
101 East Kennedy Boulevard, Suite 1810
Tampa, Florida 33602-5148
Off.:   (813) 222-1800
Fax:   (813) 222-1801
Counsel for Plaintiffs